UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

YADIRA R.,

             Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

             Defendant.

Case No. 2:19-cv-00160-TLF

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of Defendant's denial of her application for disability insurance benefits.

The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the undersigned agrees that the ALJ erred, and the ALJ's decision is reversed and remanded for further administrative proceedings.

## I. ISSUES FOR REVEW

1. Did the ALJ engage in impermissible "cherry picking" when evaluating the medical record?
2. Did the ALJ err by not evaluating Plaintiff's obesity at step two of the sequential evaluation?
3. Did the ALJ properly evaluate the opinion evidence?
4. Did the ALJ err in evaluating Plaintiff's symptom testimony?

## II. BACKGROUND

On June 21, 2010, Plaintiff filed an application for disability insurance benefits, alleging a disability onset date of March 1, 2010. AR 180. Plaintiff's application was denied upon initial administrative review and on reconsideration. *Id.* A hearing was held before Administrative Law Judge ("ALJ") Cheri Filion on April 20, 2012. AR 64-90. On May 3, 2012, ALJ Filion issued a fully favorable decision finding that Plaintiff was disabled as of her allege onset date. AR 135-44.

On July 2, 2012, the Social Security Appeals Council sent notice of its intention to review the ALJ's decision. AR 146. On September 18, 2012 the Appeals Council issued an order vacating the ALJ's May 3, 2012 decision and remanding the case for further proceedings. AR 145-48. The Appeals Council found that Plaintiff had significant earnings in 2010 and 2011, and that she may have engaged in substantial gainful activity after her alleged onset date. AR 147.

On May 3, 2013, ALJ Filion held a new hearing. AR 91-106. During the hearing, Plaintiff explained that the earnings in question came from work done by her husband and family members and testified that she had not worked since 2010. AR 95-96. Plaintiff explained that she received the payments because she was the only member of her family with a Social Security number. AR 96-97.

On August 9, 2013, ALJ Filion issued a revised, unfavorable decision. AR 149-66. ALJ Filion found that Plaintiff had engaged in substantial gainful activity between January 1, 2011 and December 31, 2011, citing Plaintiff's statements that she continued working after her alleged onset date and evidence that Plaintiff made significant contributions to her family business. AR 155-56. On March 27, 2015, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. AR 172-77.

On April 8, 2015, Plaintiff filed a new application for disability insurance benefits, again alleging a disability onset date of March 1, 2010. AR 46, 293-96. Plaintiff's application was denied upon initial administrative review and on reconsideration. AR 47, 206-08, 212-14. On April 27, 2017, ALJ Glenn Meyers held a new hearing, during which Plaintiff asked ALJ Meyers to re-open the August 9, 2013 hearing decision. AR 107-34. On September 14, 2017, ALJ Meyers issued a decision finding that Plaintiff was not disabled. AR 41-59. ALJ Meyers denied Plaintiff's request to re-open the prior decision, found that it was administratively final, and determined that the earliest Plaintiff could be found disabled was August 10, 2013, the day after ALJ Filion's August 9, 2013 decision. AR 47-48. On November 28, 2018, the Appeals Council denied Plaintiff's request for review. AR 1-9.

On February 1, 2019, Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision. Dkt. 1. Plaintiff asks this Court to reverse the ALJ's decision and to remand this case for an award of benefits or additional proceedings. Dkt. 9, pp. 14-15.

### III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

### IV. DISCUSSION

In this case, the ALJ found that Plaintiff had the following severe, medically determinable impairments: rheumatoid arthritis; fibromyalgia; osteoarthritis; bilateral

ORDER REVERSING AND REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS - 3

1  degenerative joint disease; lumbar degenerative disc disease; headaches; and
depressive disorder. AR 50.

Based on the limitations stemming from these impairments, the ALJ assessed Plaintiff as being able to perform a reduced range of light work. AR 51-52. Relying on vocational expert ("VE") testimony, the ALJ found that Plaintiff could not perform his past work, but determined that there were other light, unskilled jobs Plaintiff could perform; therefore the ALJ determined at step five that Plaintiff was not disabled. AR 57-59, 124-28.

A. <u>Whether the ALJ erred in evaluating the medical record</u>

Plaintiff contends that the ALJ erred in his discussion of the medical record by only citing evidence consistent with his finding that Plaintiff was not disabled while ignoring other evidence consistent with Plaintiff's allegations. Dkt. 9, pp. 3-5.

An ALJ errs by selectively citing those portions of the record consistent with his or her conclusion while ignoring evidence consistent with a finding of disability. *See Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014); *see also Attmore v. Colvin*, 827 F.3d 872, 875 (9th Cir. 2016) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (the Court "cannot affirm . . . 'simply by isolating a specific quantum of supporting evidence,' but 'must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"); *Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) ("In essence, the ALJ developed [her] evidentiary basis by not fully accounting for the context of materials or all parts of the . . . reports. [Her] paraphrasing of record material is not entirely accurate regarding the content or tone of the record.").

Plaintiff argues that during some of the office visits cited by the ALJ, Plaintiff was primarily complaining of abdominal pain and upper respiratory issues and the focus of her appointments were these conditions rather than her musculoskeletal impairments. Dkt. 9, pp. 3-4. While Plaintiff's primary complaints during these visits were unrelated to her musculoskeletal impairments, her physicians performed physical examinations during each appointment, and the ALJ accurately characterized the results of these examinations in his decision. AR 53, 407-409, 418-21, 764-65.

Plaintiff also challenges the ALJ's conclusion that she was "seemingly in good health" in January 2015 by relying on the results of a physical examination which revealed no synovitis in her left knee, right knee or ankle, a normal range of motion in her knees, and normal ambulation. AR 53, 435. Plaintiff cites the same physical examination, which revealed excessive pain with palpation of her ankle and pain with movement of her ankle that radiated up her leg to her knee, and which appeared to be the result of hyperalgesia. Dkt. 9, p. 4; AR 435-36. Plaintiff also cites the results of an MRI of Plaintiff's lumbar spine from November 2013. *Id.* Plaintiff also contends that while the ALJ referred to a "possible" ankle fracture in his decision, the record indicates that Plaintiff did have a fleck fracture in her ankle. Dkt. 9, p. 4; AR 53. Plaintiff further contends that the ALJ did not evaluate observations from physical therapist, Jennifer Dawes. Dkt. 9, p. 5.

It is unnecessary for the ALJ to "discuss *all* evidence presented". *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). However, an ALJ "may not reject 'significant probative evidence' without explanation.*" Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (quoting

*Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (quoting *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). Plaintiff's physical therapy, the MRI of Plaintiff's lumbar spine, the finding that Plaintiff had a fleck fracture in her ankle, and her significant pain during the examination cited by the ALJ in support of his decision all constitute significant, probative evidence that tends to support Plaintiff's allegations, and the ALJ erred by not considering this evidence.

      B.  <u>Whether the ALJ erred by not assessing the impact of Plaintiff's obesity</u>

Plaintiff maintains that the ALJ erred by failing to evaluate the impact of her obesity at step two of the sequential evaluation, even though her obesity was mentioned "many times" by Plaintiff's treating and examining providers. Dkt. 9, p. 5.

The ALJ did not evaluate Plaintiff's obesity at step two and did not include obesity among Plaintiff's severe or non-severe impairments, despite physicians, including the state agency consultant, diagnosing obesity as a medically determinable impairment, and Plaintiff's Body Mass Index ("BMI") typically being above 30, which is consistent with obesity. AR 50, 198, 391, 408, 412, 416, 420, 426, 434, 446, 451, 454, 490, 495, 501, 505, 509, 512, 517, 520, 524, 529, 535, 544, 550, 555, 637-38, 644, 649, 654, 658, 664, 670, 675, 689, 879, 885, 891, 898, 907, 913, 919, 925, 930, 937, 949, 957, 964, 969, 975, 982, 989, 995, 1002, 1020, 1026; *see also* Social Security Ruling ("SSR") 02-01p (referencing NIH Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults.)

SSR 02-01p provides that adjudicators must consider any additional and cumulative effects an individual's obesity may have on their other physical and mental

impairments. Accordingly, the ALJ erred by not considering the impact of Plaintiff's obesity on her residual functional capacity ("RFC").

C. <u>Whether the ALJ erred in evaluating the medical opinion evidence</u>

Plaintiff contends that the ALJ erred in evaluating the opinion of examining psychiatrist Anslem Parlatore, M.D. Dkt. 9, pp. 6-7.

In assessing an acceptable medical source – such as a medical doctor – the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

Dr. Parlatore examined Plaintiff on August 13, 2015. AR 589-92. Dr. Parlatore's evaluation consisted of a clinical interview and a mental status examination. Based on the results of his evaluation, Dr. Parlatore stated Plaintiff had the ability to reason and understand and her memory, concentration, pace and persistence were all organically and cognitively intact. AR 591.

Dr. Parlatore added that Plaintiff's ability to function socially was markedly impaired, and opined that Plaintiff could not tolerate the mental demands associated with competitive work. AR 591.Dr. Parlatore opined that Plaintiff's social interaction,

adaptation, ability to engage in activities of daily living and ability to engage in formal work activities were all impaired by her physical limitations. AR 591-92.

Dr. Parlatore opined that Plaintiff had the ability to perform simple and repetitive tasks, but could not stand without fainting and would have considerable difficulty with detailed and complex tasks and physical tasks. AR 592. Dr. Parlatore stated that Plaintiff would not have any difficulty accepting instructions but would have marked difficulty carrying them out, and her interpersonal interactions would be affected by her chronic pain and mood to a severe extent, and she would have severe difficulty dealing with the usual stress encountered in a work environment. *Id.*

The ALJ assigned "little weight" to Dr. Parlatore's opinion, reasoning that Dr. Parlatore: (1) only conducted a brief exam for non-treatment purposes; (2) did not review Plaintiff's limited mental health treatment history; (3) relied primarily on Plaintiff's unreliable self-reports; (4) assessed marked limitations in social functioning inconsistent with Plaintiff's activities of daily living; (5) opined that Plaintiff would have difficulty with tasks, but Plaintiff is able to care for her 11 year old daughter, which suggests she is capable of completing tasks; (6) based his assessment partly on the impact of Plaintiff's physical impairments; and (7) diagnosed Plaintiff with "reactive situational depression" which suggests that Plaintiff's life circumstances were the primary contributor to her mental impairments. AR 56.

With respect to the ALJ's first reason, the fact the Dr. Parlatore examined Plaintiff once is not, in and of itself, a specific, legitimate reason for discounting his opinion. An examining doctor, by definition, does not have a treating relationship with a claimant and usually only examines the claimant one time. *See* 20 C.F.R. § 404.1527. "When

ORDER REVERSING AND REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS - 8

considering an examining physician's opinion . . . it is the quality, not the quantity of the examination that is important. Discrediting an opinion because the examining doctor only saw claimant one time would effectively discredit most, if not all, examining doctor opinions." *Yeakey v. Colvin*, 2014 WL 3767410 at *6 (W.D. Wash. July 31, 2014). Therefore, the ALJ improperly rejected Dr. Parlatore's opinion because it was based on a one-time examination.

With respect to the ALJ's second reason, a lack of familiarity with the longitudinal record can serve as a specific, legitimate reason for discounting a medical opinion. *See* 20 C.F.R. § 404.1527(c)(6) ("the extent to which a medical source is familiar with the other information in your case record" is a relevant factor that the agency will consider in deciding the weight to give to a medical opinion). Here, the ALJ stated that "There are no mental health treatment records. Dr. Parlatore reviewed no medical records." AR 56. The ALJ cannot claim that there are no mental health treatment records and then fault Dr. Parlatore for not reviewing them.

Plaintiff's limited mental health treatment is not a specific and legitimate reason for discounting Dr. Parlatore's opinion, and the fact that Dr. Parlatore is the only psychiatrist who examined Plaintiff enhances the probative value of his opinion. *See Nguyen v. Chater,* 100 F.3d 1462, 1465 (9th Cir. 1996). ("the fact that [the] claimant . . . did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that [a physician's] assessment of claimant's condition is inaccurate … those afflicted with depression "often do not recognize that their condition reflects a potentially serious mental illness."); *see also Blankenship v. Bowen*, 874 F.2d

1116, 1124 (6th Cir. 1989) ("it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation").

As for the ALJ's third reason, an ALJ may reject a physician's opinion "if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)). This situation is distinguishable from one in which the doctor provides her own observations in support of her assessments and opinions. *See Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008). "[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing Ryan, 528 F.3d at 1199-1200).

Here, Dr. Parlatore utilized objective measures such as a clinical interview and a mental status examination in forming his opinion, and there is no evidence that he relied largely upon Plaintiff's self-reports. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (a psychiatrist's clinical interview and MSE are "objective measures" which "cannot be discounted as a self-report.").

With respect to the ALJ's fourth and fifth reasons, an ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir.1999).

However, disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *See Reddick v. Chater*, 157 F.3d 715, 722

(9th Cir. 1998), citing *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir.1987) (noting that a disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits); *see also Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled."), citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989); *Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) ("House chores, cooking simple meals, self-grooming, paying bills, writing checks, and caring for a cat in one's own home, as well as occasional shopping outside the home, are not similar to typical work responsibilities.").

Here, the ALJ cited Plaintiff's church attendance, ability to shop in stores, care for her 11-year old daughter, tend to her personal care and brief participation in her daughter's school activities as being inconsistent with Dr. Parlatore's opinion that Plaintiff would have marked social limitations and difficulty completing tasks. AR 56. Plaintiff's ability to participate in these everyday activities does not constitute a specific and legitimate reason for discounting Dr. Parlatore's opinion. *See Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (when an ALJ fails to provide specific details about a claimant's childcare responsibilities, childcare responsibilities cannot constitute 'substantial evidence' inconsistent with a physician's informed opinion.)

As for the ALJ's sixth reason, as a trained medical doctor Dr. Parlatore can offer an opinion as to the functional impact of Plaintiff's physical and mental impairments. As a physician with a specialization in psychiatry, Dr. Parlatore is uniquely qualified to offer

an opinion concerning the functional impact of Plaintiff's physical impairments on her mental health. *See* 20 C.F.R. § 404.1527(c)(5) (The Social Security Administration generally gives more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.)

The ALJ found that Dr. Parlatore based his opinion partly on Plaintiff's inability to stand without fainting and difficulty completing activities of daily living. AR 56, 591-92. The ALJ reasoned that no medical doctor assessed any limitations due to Plaintiff's fainting spells and there was no evidence to support Dr. Parlatore's finding that Plaintiff had marked limitations in performing activities of daily living. *Id.*

First, Dr. Parlatore stated that during his examination Plaintiff exhibited no feigning or factious behavior, and that there was no evidence of exaggeration of symptoms or inconsistencies in Plaintiff's statements. AR 592. Second, the ALJ's conclusion that no medical doctor assessed limitations stemming from Plaintiff's fainting spells is inaccurate given that Dr. Parlatore, himself a medical doctor, has assessed such limitations.

Third, Plaintiff's claims concerning her fainting spells are supported by the record, which indicates that Plaintiff was taken to the emergency room in July 2015 after fainting at Costco. AR 620-24. Plaintiff's family stated that she has "frequent" fainting spells, and Plaintiff had two additional fainting episodes between July and August 2015. AR 623, 662.

Fourth, Dr. Parlatore assessed Plaintiff as having marked difficulties in performing activities of daily living due to both her mental impairments and her pain,

fainting spells, her need for a heart monitor and a hard brace and cast she was wearing on her left leg. AR 591-92. Dr. Parlatore has not expressed any concerns about Plaintiff's credibility, and the record broadly supports Plaintiff's allegations concerning her mental impairments and fainting spells as well as Dr. Parlatore's conclusion that Plaintiff's depression is exacerbated by her physical impairments. *See* AR 623, 662, 666, 955.

As for the ALJ's seventh reason, a finding that a claimant's mental health symptoms are largely attributable to situational stressors can serve as a reason for discounting a physician's opinion. *See e.g. Chesler v. Colvin*, 649 F. App'x. 631, 632 (9th Cir. 2016) (symptom testimony properly rejected in part because "the record support[ed] the ALJ's conclusion that [plaintiff's] mental health symptoms were situational").

Dr. Parlatore diagnosed Plaintiff with "Reactive Situational Depression." AR 591. However, according to Dr. Parlatore, the situation causing Plaintiff's depression is not an isolated traumatic incident such as being laid off from work or losing a family member, but rather the stress and pain caused by Plaintiff's ongoing physical impairments. AR 589.

As such, the ALJ has not provided any specific and legitimate reasons for discounting Dr. Parlatore's opinion.

D. <u>Whether the ALJ erred in evaluating Plaintiff's symptom testimony</u>

Plaintiff contends that the ALJ erred in assessing her symptom testimony. Dkt. 9, pp. 8-9.

In weighing a Plaintiff's testimony, an ALJ must use a two-step process. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014). If the first step is satisfied, and provided there is no evidence of malingering, the second step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ can provide specific findings and clear and convincing reasons for rejecting the claimant's testimony. *Id. See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistent testimony about symptoms is clear and convincing reason to discount subjective allegations).

In discounting Plaintiff's symptom testimony, the ALJ reasoned that Plaintiff's physical and mental complaints were inconsistent with the objective medical evidence. AR 53-55.

Inconsistency with objective evidence may serve as a clear and convincing reason for discounting a claimant's testimony. *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). But an ALJ may not reject a claimant's subjective symptom testimony "solely because the degree of pain alleged is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995) (internal quotation marks omitted, and emphasis added); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying rule to subjective complaints other than pain).

Defendant contends that the ALJ also discounted Plaintiff's mental health complaints as situational in nature and noted that Plaintiff had not engaged in any

1  mental health treatment through August 2015. Dkt. 14, pp. 6-7. For the reasons

2  discussed above, these findings cannot serve as clear and convincing reasons for

3  discounting Plaintiff's symptom testimony. *See supra* Section C. Accordingly, the ALJ

4  has not provided clear and convincing reasons for discounting Plaintiff's testimony.

   E.  Additional evidence

6  The record contains evidence submitted by Plaintiff after the ALJ issued his

7  decision. AR 16-34. The Appeals Council denied review of Plaintiff's claim and opted

8  not to exhibit this evidence, reasoning that it did not relate to the period at issue. AR 2.

9  This Court must consider this additional material in determining whether the

10 ALJ's decision is supported by substantial evidence. *See Brewes v. Commissioner of*

11 *Social Security*, 682 F.3d 1157, 1160 (9th Cir. 2012) (when a claimant submits evidence

12 for the first time to the Appeals Council, which considers that evidence in denying

13 review of the ALJ's decision, the new evidence is part of the administrative which the

14 district court must consider in determining whether the Commissioner's decision is

15 supported by substantial evidence).

16 The evidence in question consists of a medical opinion from examining physician

17 Viraj Singh, M.D. and treatment notes concerning Plaintiff's migraine headaches. AR

18 16-34. The ALJ shall evaluate this evidence as appropriate on remand.

   F.  Remand With Instructions for Further Proceedings

20 Plaintiff asks this Court to reverse the ALJ's decision and to remand this case for

21 an award of benefits or additional proceedings. Dkt. 9, pp. 14-15. "'The decision

22 whether to remand a case for additional evidence, or simply to award benefits[,] is within

23 the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017)

(quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

The Ninth Circuit emphasized in *Leon v. Berryhill* that even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. 80 F.3d 1041, 1045 (9th Cir. 2017).

Here, the ALJ must re-evaluate Plaintiff's testimony, the opinion of Dr. Parlatore, Plaintiff's obesity, and the medical record. Therefore, there are outstanding issues which must be resolved and remand for further administrative proceedings is the appropriate remedy.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ erred when he determined Plaintiff to be not disabled. Defendant's decision to deny benefits is REVERSED and this matter is REMANDED for further administrative proceedings. The ALJ is directed to re-evaluate Plaintiff's testimony, the opinion of Dr. Parlatore, Plaintiff's obesity, and the medical record on remand.

Dated this 27th day of February, 2020.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge